IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

BOBBY WARD,

                        Petitioner,                         **DECISION AND ORDER**
                                                            **No. 02-CV-0663(VEB)**

        -vs-

VICTOR HERBERT, Superintendent, Attica
Correctional Facility,

                        Respondent.
_____


## I.      Introduction

        Petitioner Bobby Ward ("Ward" or "petitioner") filed a *pro se* petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court

on one count of first degree robbery. The parties have consented to disposition of this matter by

the undersigned pursuant to 28 U.S.C. § 636(c)(1).

## II.     Factual Background and Procedural History

        The conviction here at issue stems from Ward's involvement with Damien Lott ("Lott" or

"co-defendant") in the assault and robbery at gunpoint of Jipcho Bordeaux ("Bordeaux" or "the

victim") which took place in the late night hours of January 24-25, 1998, in the City of

Rochester. During the course of the robbery, Bordeaux was pistol-whipped and shot non-fatally

several times; he was left by the perpetrators inside of an abandoned car.

        Under Monroe County Indictment No. 98-0172B, Ward and Lott were charged jointly

with one count of attempted murder in the second degree, two counts of assault in the first

degree, two counts of robbery in the  first degree, criminal possession of a weapon in the second

and third degrees, criminal use of a firearm, and grand larceny in the fourth degree. The charges

against Lott were severed, and the two defendants were tried separately. Lott was acquitted after

a jury trial. *See* T.7.[1]

At Ward's trial in Monroe County Court (Sirkin, J.), Bordeaux, the victim, testified that

he had gotten together socially with Ward and Lott on the evening of January 24, 1998. Bordeaux

anticipated that the three men were going to go out to various dance clubs to try to pick up some

girls. T.216-17, 300. Bordeaux stated that he had known Ward for sixteen years, since grammar

school. He had known co-defendant Lott for ten years. T.211-12. Bordeaux testified that as they

were out cruising the streets in a car owned by his sister, Ward was driving and Lott was in the

backseat. Bordeaux stated that he was sitting in the passenger's seat and was not driving because

he did not have a driver's license. T.214.

Prior the robbery, the three men had been driving around for about three hours with no

arguments taking place; they were merely discussing their plans for the evening. T.215-16.

Bordeaux admitted that he never saw or heard any "signals" between Lott and Ward; Ward was

just driving the car. T.287. Bordeaux testified that when Ward turned the car onto Elba Street, he

believed that they were going to see a girl whom they all knew. Bordeaux testified that he told

Ward and Lott that it was time for them to "split up" for night. T.287. Bordeaux recalled that he

then heard several gunshots coming from behind him and saw sparks; Lott was still sitting in the

backseat. T.213-14, 217, 226. Although he was seriously injured, Bordeaux did not lose

consciousness. Ward continued to drive towards Plymouth Street, and Bordeaux testified that he

---

[1]        Citations to "T.___" refer to the trial transcript.

attempted to escape by trying to roll out of the passenger-side door into an intersection where several people were standing. T.219. However, Bordeaux stated, his escape attempt was thwarted because Ward activated the power door-lock on the passenger-side door. T.219.

Bordeaux related that Ward proceeded to park the car between two dumpsters behind School No. 19 on Flint Street. T.220. Bordeaux heard Lott say, "Wipe down the car." T.220. Bordeaux related that he then saw both Ward and Lott moving back and forth. Bordeaux, unable to move because of the seatbelt, heard Ward say to Lott, "Yo, his eyes [sic] still open." T.200, 221. Bordeaux admitted that at that point, he "get[s] confused" about the sequence of events because "[i]t happened so fast." T.222. Bordeaux testified that Lott told Ward, "Yo, take his money, leave his jewelry." T.223. According to Bordeaux, Ward then took money (approximately $400) out of his left pant's pocket and removed a ring from his finger. T.223-24.

Bordeaux testified that Ward began "grabbing [his] windpipe area a couple of times" for "a minute, maybe ten seconds or so." T.224. Lott then did the same thing and started to pistol-whip him, "ramming" him in the face and head with a black handgun. T.224-25. According to Bordeaux, Ward and Lott exited the vehicle after wiping down the car. T.227. As they did so, Bordeaux testified that he "thought" he heard Lott say, "Shoot him again" and then, "Yo, I loved that nigger." T.227. Bordeaux testified that he heard Ward say, "Fuck that nigger." T.228. Both Ward and Lott then left the scene. T.228.

Bordeaux testified that after struggling for more than a half an hour, he was able to free himself and start the car. T.229-21. He put it into reverse, and it first rolled backward, smashing into the back of the school building; he turned the wheel and the car rolled out into the street, where it came to a stop on its own. T.232-33. Bordeaux honked the horn continuously and yelled

for help until someone came to his aid. T.234-35. That individual, Ronald Washington, drove Bordeaux to St. Mary's Hospital where he was treated for his injuries. T.235-36.

At the time of trial, Bordeaux was in state prison for a parole violation. He admitted to numerous previous convictions for criminal possession of controlled substances, several robberies, automobile theft, assaulting his girlfriend on multiple occasions, possession of cocaine, and attempted assault on a fellow inmate. T.207-11, T.298. Bordeaux previously had served three sentences of incarceration in state prison. T.281. Bordeaux admitted that when he first told the police about the incident, he made up a phony story that the shooting was over a football bet because he was "scared" and "nervous." T.264.

Following the close of the states's direct case, the prosecutor voluntarily agreed to dismiss the charges of fourth degree grand larceny and third degree criminal possession of a weapon. The trial court *sua sponte* dismissed one count of first degree assault (N.Y. Penal Law § 120.10(3)). The remaining counts of the indictment were submitted to the jury, which returned a verdict convicting Ward of one count of first degree robbery but acquitting him of attempted murder, assault, and a second count of robbery.

On May 11, 1999, the parties appeared for sentencing. Ward was adjudicated as a second violent felony offender. However, sentencing was adjourned because trial counsel indicated that he wished to file a motion to set aside the verdict pursuant to New York Criminal Procedure Law ("C.P.L.") § 330.30. That application was denied, and Ward was sentenced to a determinate term of imprisonment of twenty years.

Ward was represented by new counsel on direct appeal, and he also submitted a *pro se* supplemental brief asserting that trial counsel had been ineffective. The Appellate Division,

Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on February 1, 2002.  The New York Court of Appeals denied leave to appeal.

Ward subsequently filed a *pro se* motion to vacate the judgment pursuant to C.P.L. § 440.10 asserting that trial counsel had been ineffective in failing to call co-defendant Lott to testify at his trial that he had been acquitted of all of the charges against him and that he had not directed Ward to take any money from the victim. This application was denied by the trial court, and leave to appeal to the Appellate Division was denied.

Ward then filed a federal habeas petition in which he asserts the following grounds for relief: (1) the prosecutor violated his disclosure obligations under *Brady v. Maryland* by failing to disclose a ballistics report; (2) the trial court erred in denying the defense request for a continuance following disclosure of the ballistics report; and (3) the verdict was against the weight of the evidence. Ward also filed an amended petition asserting the claim raised in his C.P.L. § 440.10 motion asserting that trial counsel was ineffective in failing to call his co-defendant to testify. Respondent has conceded that the claim in the amended petition "relates back" to the original petition for purposes of Rule 15(c) of the Federal Rules of Civil Procedure. Therefore, the claim in the amended petition is timely under 28 U.S.C. § 2244(d).

Respondent concedes that Ward's ineffective assistance of trial counsel claim and claim regarding the denial of the continuance are exhausted. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).  However, respondent argues that Ward's claim regarding the disclosure of the ballistics report and "weight of the evidence" claims were not "fairly presented" to the New York Court of Appeals because they were not mentioned in his letter seeking leave to appeal. The Court has reviewed the records from the appellate proceedings below and finds that the *Brady*

claim regarding the ballistics report was adequately presented to all of the state courts and

therefore is exhausted. The weight of the evidence claim was not mentioned in Ward's leave

letter, as respondent points out. However, that claim is not cognizable on federal habeas review

as a federal constitutional claim, as discussed below, and can be dismissed on that basis.

 For the reasons set forth below, the petition and amended petition are dismissed.

## III.    Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal

review of his conviction must demonstrate that the state court's adjudication of his federal

constitutional claim resulted in a decision that was contrary to or involved an unreasonable

application of clearly established Supreme Court precedent, or resulted in a decision that was

based on an unreasonable factual determination in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

## IV.    Analysis of Claims Raised in the Petition

**Claim 1:       The prosecution violated *Brady v. Maryland* by failing to timely
disclose a ballistics report and criminal investigative report
indicating that the gun used in the instant offense had been used in a
previous unsolved shooting.**

As his first claim for relief, Ward asserts that the prosecutor's disclosure during trial of a

ballistics report regarding the gun used in the incident violated his constitutional rights under

*Brady v. Maryland*, 373 U .S. 83, 87 (1963). At the conclusion of the direct examination of

Officer Stenczik, the police evidence technician who examined the car in which Bordeaux was

shot, the prosecutor provided the defense with a ballistics report indicating that the same gun

used in the incident against Bordeaux on January 24, 1998, had been used in an earlier, unsolved

shooting on Bronson Avenue in the City of Rochester on January 18, 1998. T.166. During the lunch recess, the prosecutor also provided to defense counsel and the trial court a copy of the crime report corresponding to the January 18th shooting. T.246. After the recess, the trial court agreed that it would have been better for the prosecutor to have disclosed the report at the time it was issued, but indicated that it did not see any *Brady* material in the report. T.246. Defense counsel disagreed, and requested an open-ended continuance which the trial court denied. T.246-52.

On direct appeal, the Appellate Division held,

> We agree with defendant that the People were required to provide him with a ballistics report concerning the analysis of spent bullet casings found at the scene (see, CPL 240.20(1)(c)); *see also*, *People v. Jenkins*, 284 A.D.2d 550, 727 N.Y.S.2d 463). We conclude, however, that reversal is not required based on the People's delay in providing him with that report because he was not substantially prejudiced by the delay (see, *People v. Benitez*, 221 A.D.2d 965, 966, 634 N.Y.S.2d 328, *lv. denied* 87 N.Y.2d 970, 642 N.Y.S.2d 199, 664 N.E.2d 1262). We reject defendant's additional contention that the report constituted *Brady* material; the information contained in the report was not exculpatory. In any event, even assuming, *arguendo*, that the report constituted *Brady* material, we conclude that defendant was provided with the report at a time when he had a meaningful opportunity to use it (see, *People v. Jackson*, 281 A.D.2d 906, 907, 723 N.Y.S.2d 771, *lv. denied* 96 N.Y.2d 920, 732 N.Y.S.2d 636, 758 N.E.2d 662).

*People v. Ward*, 291 A.D.2d 906, 737 N.Y.S.2d at 319.

The United States Supreme Court has held that it is a violation of the accused's constitutional right to due process for the Government, in good faith or in bad faith, to withhold any material, exculpatory evidence whether or not the defendant explicitly requests this evidence. *See Brady v. Maryland*, 373 U .S. at  87 (holding that the prosecution's suppression of requested evidence favorable to the defendant violates due process, notwithstanding the prosecution's good faith); *United States v. Agurs*, 427 U.S. 97, 106 (1976) (holding that

prosecution's failure to disclose material, exculpatory evidence, even if it is not requested by the defendant, constitutes a due process violation); *United States v. Bagley*, 473 U.S. 667, 682, 684 (1985) (holding that the prosecution's failure to disclose evidence, which, if admitted, would have had a reasonable probability of resulting in a different verdict, is grounds for granting a petition under 28 U.S.C. § 2255). The Supreme Court has explained that "[t]here are three components to a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Exculpatory evidence is "material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A petitioner is only entitled to relief if the prosecution's failure to turn over Brady material "undermines confidence in the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *Bagley*, 473 U.S. at 678). This Court agrees with the state courts that the ballistics report and the associated police investigative report about the January 18th shooting did not constitute *Brady* information:  The mere fact that the same gun used to shoot the victim during the January 24th incident with which Ward was charged also was used in an unsolved shooting one week earlier on January 18th was neither favorable nor material to petitioner's case. Even assuming for the sake of argument, that the police had identified the individual who committed the earlier shooting, such evidence would not have served to exculpate Ward from his involvement in the later robbery and shooting of Bordeaux.  Indeed, it could be argued that

the report, if admitted, would have been highly prejudicial to Ward, and it is likely that any reasonable counsel would have sought to exclude any mention of it, lest the jury focus on Ward as the perpetrator of another crime involving the firearm.

The following colloquy between the trial court and defense counsel illustrates the lack of materiality of the reports and the fact that the belated disclosure did not prejudice the defense:

| The Court: | You just advised the Court that time period [sic] includes the time period of the matter that is on trial before the Court, correct? |
| Defense Counsel: | Yes, your Honor. |
| The Court: | I don't see any prejudice then, because you have known about that. |
| Defense Counsel: | But I have known about this other circumstance. |
| The Court: | No. Granted. |
| Defense Counsel: | And about the gun being used in another incident. |
| The Court: | Granted, but you knew the date of this matter and have know it for a long period of time? It's all the same issue, isn't it? |
| Defense Counsel: | I don't believe so, your Honor. |
| The Court: | How long a continuance were you looking for? |
| Defense Counsel: | That I don't know, your Honor. To be honest with you, because all of this is brand new and obviously, to support that possible defense, I would have to bring in officers concerning the January 18th matter. |
| The Court: | How can that possibly be relevant since it was unsolved? |
| Defense Counsel: | Because they would testify that they recovered casings from that location concerning an incident that occurred. We would have to trace [sic] those casings to the Monroe County Laboratory for the analysis to come in. We would have to have [ballistics expert] Stanton come in and give his expert opinion it was the same gun. |
| The Court: | To what relevance? There's no relevance here, counselor. |
| Defense Counsel: | It's the same gun involved in both incidents, your Honor. |
| The Court: | No relevance. Your client is not on trial for that earlier incident. |
| Defense Counsel: | But his innocence in that matter would impact his innocence in th is matter, as well[,] judge. |
| The Court: | His innocence on the first matter has nothing to do with calling the police who investigated that first matter. |

| | |
|---|---|
| Defense Counsel: | I can't bring in evidence pertaining to that other matter without those officers testifying that they investigated an incident, they recovered a casing, they have the casing examined by Mr. Stanton. Mr. Stanton compared that casing with the casing that is in issue here and made a positive determination that it was the same gun involved in both matters. |
| The Court: | I'm going to deny your application based upon the argument and information presented to me at this time. |

T.250-52.

Second, even assuming that the reports were *Brady* material, there is no mandate under the federal constitution that such information be disclosed prior to trial or at any specific time. Neither the Second Circuit nor the Supreme Court has specified the timing of disclosure that *Brady* requires, but it is clearly established that "disclosure prior to trial is not mandated." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir.2001) ("It is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.") (citations omitted). *Brady* only requires disclosure of the material exculpatory evidence at a point when the defense can make "effective" use of the information. *Id.* Defense counsel argued at trial that had the reports been disclosed in a more timely manner, he could have established an alibi defense:

> [W]hy I think it's extremely important from the defense standpoint, is that it appears from these reports that the same gun was used both on a January 18th incident and the incident that's in issue that's indicated occurred on January 24th and into January 25th of 1998. From the beginning . . . my client always expressed the position that from approximately January 10th of 1998 up to and including January 25th of 1998 he was not in town, he was not in the City of Rochester. He was in fact, outside of the City of Rochester visiting relatives and that Mr. Lott was with him during that entire time period. So obviously, neither one of the two individuals could have been involved in the January 18th 1998 matter. And if an

individual in the January 18th incident also had the same gun that was used on January 24th of 1998, obviously we are talking about a totally different individual other than my client and/or Damien Lott.

T.247. However, defense counsel then acknowledged that, up to that point, nothing had

prevented him from presenting alibi witnesses at Ward's trial. T.248. Although the defense had

been served with an alibi demand by the prosecution, trial counsel never provided notice of an

intent to proceed with an alibi defense. T.248.  The Court notes that defense counsel merely was

arguing that he could not have investigated an alibi for the unrelated January 18th incident. At the

same time, he also had just informed the court that his client had been out of town beginning on

January 10th through January 25th. Thus, knowledge that the other incident described in the

ballistics report occurred on January 18th– while Ward allegedly was out of town anyway–did not

alter the relevant time period for a potential alibi. And, as the trial court pointed out, the defense

had not been denied the opportunity to present alibi witnesses on the January 24th matter being

tried. T.248; *see also* S.7.[2]

The Court has reviewed Ward's pleadings on appeal and in support of his petition and

cannot find a clear articulation of how, exactly, the delayed disclosure of the ballistics report and

associated investigative report prejudiced him. Ward's only argument as to why the reports were

"material" appears to be that he allegedly was unable to prevent a defense because he was denied

his right to call witnesses. As noted above, Ward knew of the relevant time periods and was

aware of a potential alibi defense, but apparently chose not to pursue it or call any witnesses in

support of that defense. Furthermore, after viewing the reports at trial, defense counsel only

argued that he intended to call the police officers and ballistics expert involved to testify that the

---

[2]        Citations to "S._" refer to the transcript of the sentencing hearing.

gun used in the instant offense had been used in a shooting one week earlier. It is important to

note that the earlier crime had remained unsolved, so there was no indication that there was a

connection between the two victims; there was no "lead" in the reports suggesting that the same

individual was responsible for both incidents, let alone who was involved in the earlier incident.

Ward also argues that "proof that someone else was previously in possession of the weapon used

to harm Mr. Bordeaux less than one week prior to the charged offense was relevant evidence; it

allowed an inference that another person was responsible for shooting Mr. Bordeaux." Pet'r App.

Br. at 28, Resp't Ex. C. In this Court's opinion, the inference that Ward is attempting to draw is

of an exceedingly tenuous nature and based only on the rankest speculation. As the trial court

pointed out in denying defense counsel's motion to set aside the verdict, Ward "was not the

shooter in the crime charged in th[e] trial." S.8. Moreover, the trial judge commented, "[L]ast

and certainly not least I don't know how anyone could possibly draw an inference . . . even if for

the sake of argument . . . that one weapon was possessed by the same person on both of the

occasions mentioned." S.8.

 The Court agrees that with the state court to finding, first, that the reports concerning the

earlier, unsolved shooting were not *Brady* material, and, second, that if the information about the

gun used in the two different incidents did rise to the level of *Brady* material, the withholding of

that material did not undermine confidence in the outcome of petitioner's trial. Accordingly,

habeas relief is not warranted on the *Brady* claim.

  **Claim 2:**  **The trial court erroneously denied trial counsel's request for a**
      **continuance following disclosure of the ballistics report.**

 Ward argues that he is entitled to habeas relief based on the trial court's decision to deny

his request for a continuance following the disclosure of the ballistics report and criminal

investigative report. The relevant colloquy between defense counsel and the trial judge regarding

the continuance is set forth above in this Court's discussion of Claim 1, Ward's *Brady* claim. On

direct appeal, the Appellate Division held that the trial court "did not abuse its discretion in

denying defendant's request for a continuance of an unspecified length after the People provided

him with the report" because "[d]efendant failed to demonstrate that a continuance would

produce evidence that would be material and favorable to the defense[.]" *People v. Ward*, 291

A.D.2d 906, 737 N.Y.S.2d 318 at 319(citation omitted).

　　　　"The rights to confront and cross-examine witnesses . . . in one's own behalf have long

been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294

(1973); *see also Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir.2001) ("The right to call

witnesses in order to present a meaningful defense at a criminal trial is a fundamental

constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and

the Due Process Clause of the Fourteenth Amendment."). However, the Supreme Court has

explained, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult

with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to

counsel." *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (citing *Chambers v. Maroney*, 399 U.S. 42,

53-54 (1970)).  The decision of whether to grant or deny a continuance is "a matter 'traditionally

within the discretion of the trial judge.'" *Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003)

(quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) and citing *Morris v. Slappy*, 461 U.S. at

11). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a

justifiable request for delay' violates the [Constitution]." *Morris*, 461 U.S. at 12 (quoting *Ungar*,

376 U.S. at 589); *accord Drake*, 321 F.3d at 344.

Here, the trial court's denial of the request for a continuance was in no way "unreasoning" or "arbitrary."  Ward only stated that he needed to bring in the police officers who investigated the January 18th shooting on Bronson Street for the possibility of calling defense witnesses to support an alibi defense–which appears somewhat speculative since he did not articulate until after disclosure of the reports and the parties returned to court at the conclusion of the mid-day recess on the first day of trial.  Thus, Ward's claim that the continuance was warranted to assist with presentation of an alibi defense is not supported by the record. Furthermore, Ward already knew about the relevant time periods for a possible alibi defense and, as noted above, never served an alibi notice on the prosecution.  Rather, the defense theory of the case was that Bordeaux was an inveterate liar with an egregious criminal history who had falsely accused Ward of robbing him.

In addition, Ward failed to show that he needed a continuance because the police officers who investigated the January 18th shooting were "unavailable. " The police officers would have been under the control of the prosecution, and defense counsel could have served subpoenas for them but he chose not to do so.

Perhaps most important, the trial court held that the January 18th incident was "irrelevant" to matter for which Ward was being tried. Defense counsel attempted to argue that because the same gun was involved in both incidents, and he could prove that Ward was not involved in the earlier incident, "his innocence in that matter would impact on his innocence in this matter[.]" T.251. However, the fact that the gun used in the Bordeaux case may have been used in a previous shooting and by more than one gunman would not necessarily exonerate Ward; guns are

often passed between perpetrators.  Furthermore, the earlier incident had remained unsolved, and there was no identifiable third-party connection between the two shootings. The New York Court of Appeals has held that "[t]he admission of evidence of third-party culpability may not rest on mere suspicion or surmise." *People v. Primo*, 96 N.Y.2d 351, 357 (N.Y. 2001). Ward's case is distinguishable from *People v. Primo*, where the ballistics report was found to be relevant and admissible evidence insofar as it linked a known third person to the gun used to shoot the victim and, there was proof that the third person also was at the scene of the shooting of which defendant Primo was accused. Thus, the New York Court of Appeals found, the probative value of the evidence of third-party culpability outweighed the dangers of delay, prejudice and confusion.

For the foregoing reasons, Ward has failed to show that the trial court abused its discretion in denying his request for a continuance. Therefore habeas relief testimony of the witnesses would have been "material" to his case.

**Claim 3:      The verdict was against the weight of the evidence.**

As his third ground for habeas relief, Ward argues that the jury's verdict convicting him of first degree robbery was against the weight of the evidence. Ward contends that . As noted above, the jury was instructed to deliberate on ; it acquitted him of all of the charges except first degree robbery under a theory that.

Ward's "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. Crim. Proc. Law § 470.15(5). Thus, a

"weight of the evidence" argument is a pure state law claim grounded in the criminal procedure

statute, whereas a legal sufficiency claim is based on federal due process principles. *People v.*

*Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987). The New York Court of Appeals explained the

difference as follows:

> Although the two standards of intermediate appellate review-legal sufficiency and
> weight of evidence-are related, each requires a discrete analysis. For a court to
> conclude . . . that a jury verdict is supported by sufficient evidence, the court must
> determine whether there is any valid line of reasoning and permissible inferences
> which could lead a rational person to the conclusion reached by the jury on the
> basis of the evidence at trial and as a matter of law satisfy the proof and burden
> requirements for every element of the crime charged. If that is satisfied, then the
> verdict will be upheld by the intermediate appellate court on that review basis.
>
> To determine whether a verdict is supported by the weight of the evidence,
> however, the appellate court's dispositive analysis is not limited to that legal test.
> Even if all the elements and necessary findings are supported by some credible
> evidence, the court must examine the evidence further. If based on all the *credible*
> *evidence a different finding would not have been unreasonable, then the appellate*
> *court must, like the trier of fact below, "weigh the relative probative force of*
> *conflicting testimony and the relative strength of conflicting inferences that may*
> *be drawn from the testimony."*

*People v. Bleakley*, 69 N.Y.2d at 495, 515 N.Y.S.2d at 763 (citations omitted) (emphasis

supplied).  Since a "weight of the evidence claim" is purely a matter of state law, it is not

cognizable on habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review

only where the petitioner has alleged that he is in state custody in violation of "the Constitution

or a federal law or treaty"); *Estelle v. McGuire*, 502 U.S. at 68 ("In conducting habeas review, a

federal court is limited to deciding whether a conviction violated the Constitution, laws, or

treaties of the United States."). Federal courts routinely dismiss claims attacking a verdict as

against the weight of the evidence on the basis that they are not federal constitutional issues

cognizable in a habeas proceeding. *Ex parte Craig*, 282 F. 138, 148 (2d Cir. 1922) (holding that

"a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S.

255  (1923); *Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (same); *Douglas v.*

*Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002) (same).[3]  "[A]ssessments of the weight of

the evidence or the credibility of witnesses are for the jury and not grounds for reversal on

[habeas] appeal." *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996). Ward's claim that the

verdict on the robbery charge was against the "weight of the evidence" accordingly cannot

provide a basis for habeas relief.

Moreover, even though intermediate appellate courts in New York are empowered with a

"unique factual review" under C.P.L. § 470.15's "weight of the evidence" standard, they must be

"careful not to substitute themselves for the jury" for "[g]reat deference is accorded to the

fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor."  *Id.*

This proscription against second-guessing the jury's credibility determinations applies with equal

---

[3]      *See also Garbez v. Greiner*, No. 01Civ.9865(LAK)(GWG), 2002 WL 1760960, at *8 (S.D.N.Y. July 30, 2002) ("[B]y raising a 'weight of the evidence' argument, [petitioner] does not present to this Court a federal claim as required by 28 U.S.C. § 2254(a). Instead, [petitioner] raises an error of state law, which is not available for habeas corpus review."); *Lemons v. Parrott*, 01 Civ. 9366, 2002 WL 850028, at *3 (S.D.N.Y. May 2, 2002) ("[W]e have no authority to review a weight of the evidence argument because it is a state law claim."); *McBride v. Senkowski*, 98 Civ. 8663, 2002 WL 523275, at *4 n. 2 (S.D.N.Y. Apr. 8, 2002) (holding that a weight of evidence is not cognizable on habeas review); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001) (A "'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles. Accordingly, the Court is precluded from considering the [weight of the evidence] claim.") (citations omitted); *Peralta v. Bintz*, 00 Civ. 8935, 2001 WL 800071, at *5 (S.D.N.Y. July 16, 2001) (Petitioner "raises only the state law issue of whether the weight of the evidence supported his conviction. Because [petitioner] raises no cognizable federal issue, his petition must be denied."); *Kearse v. Artuz*, 99 Civ. 2428, 2000 WL 1253205 at *1 (S.D.N.Y. Sept. 5, 2000) ("Disagreement with a jury verdict about the weight of the evidence is not grounds for federal habeas corpus relief."); *Rodriguez v. O'Keefe*, 96 Civ.2094, 1996 WL 428164 at *4 (S.D.N.Y. July 31, 1996) ("A claim that the verdict was against the weight of the evidence is not cognizable on habeas review."), *aff'd*, No. 96-2699, 122 F.3d 1057 (table) (2d Cir. Sept. 9, 1997), *cert. denied*, 522 U.S. 1123 (1998); *see also, e.g.*, *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

if not greater force on federal habeas review, where the court is only permitted to consider a challenge to the legal sufficiency of the evidence. *See Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981) (rejecting insufficient evidence claim because jury was entitled to believe State's witnesses despite inconsistencies in their testimony and State's evidence); *United States v. Florez*, 447 F.3d 145, 156 (2d Cir. 2006) (rejecting insufficiency-of-the-evidence claim where defendant challenged the accomplices' credibility based on their plea agreements with the government and their long histories of criminal and dishonest behavior) (citing *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) ("It is not for the court on a Rule 29 motion to make credibility determinations . . . ."). "Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments." *United States v. Rea*, 958 F.2d 1206, 1221-22 (2d Cir.1992. Rather, the Court must "assume that the jury 'resolve[d] all issues of credibility in favor of the prosecution.'" *Id.* (quoting *United States v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986) (alteration in original)). To the extent that Ward is challenging the credibility of the victim Bordeaux based on his extensive history of criminal and dishonest behavior, Ward simply repeats testimony and argument already presented to, and rejected by, the finder of fact. To accept petitioner's argument that the victim's testimony was incredible as a matter of law because of his criminal history and instances of untruthfulness would require this Court to usurp the function of the jury in making credibility determinations which it is foreclosed from doing in this federal habeas proceeding. *E.g.*, *Huber v. Schriver*, 140 F. Supp.2d 265, 277 (E.D.N.Y.2001) ("[M]ost of petitioner's argument rests on the suggestion that the eyewitness testimony was not credible and should not have been given enough weight to result in his conviction . . . . However,

under both the state law . . . and federal law, issues of credibility, as well as the weight to be

given to evidence, are questions to be determined by the jury . . . ." ); *Garrett v. Perlman*, 438 F.

Supp.2d 467, 470 (S.D.N.Y. 2006) ("Petitioner's specific argument in support of this claim, that

King's testimony was "incredible," is likewise not reviewable in habeas proceedings since

credibility determinations are the province of the jury.").

Ward's challenge to the evidence supporting his conviction, whether it be read as an

argument that the proof was legally insufficient or against the weight of the evidence, does not

provide a basis for habeas relief. Accordingly, the claim is dismissed.

**Claim 4:        Trial counsel was ineffective in failing to call co-defendant as a witness.**

Ward's final ground for habeas relief alleges that trial counsel was ineffective in failing to

call his co-defendant, Lott, to testify at his trial. Ward raised this ineffective assistance claim in

his C.P.L. § 440.10 motion to vacate the judgment, in support of which he submitted an affidavit

from Lott dated November 6, 2002, *see* Resp't Ex. A at 48. Lott, as noted above, was indicted

jointly with Ward but their trials were severed; Lott was acquitted by a jury of all of the charges.

According to Lott's affidavit, he was contacted by Ward's defense counsel after Lott's trial was

concluded but before Ward's trial commenced. Lott states that defense counsel informed him that

Ward wished him to testify and asked him whether he was willing to testify on "two matters,"

namely, whether Lott "was the principle [sic] and acquitted of <u>all</u> charges, and two, whether or

not [he] directed, commanded or opportuned [sic] defendant Ward to take currency from Mr.

Bordeaux [sic] person." Resp't A at 48-49 (emphasis in original). In opposition to Ward's C.P.L.

§ 440.10 motion, the prosecution submitted an affirmation indicating that

[u]pon information and belief, the source of that information being conversations

with Louis Pilato, Esq., defendant's trial counsel, there were reasonable and competent strategic reasons Mr. Pilato did not call the co-defendant to testify at trial. Mr. Pilato recalls, as defendant has alleged, speaking to Mr. Lott prior to the start of defendant's trial. At the time he spoke with Mr. Lott, Mr. Lott had been acquitted of all charges with respect to this indictment. Mr. Pilato spoke to Mr. Lott at defendant's request. It was defendant's request that counsel call Mr. Lott to testify at his trial to the fact that he was previously acquitted of the charges at issue in defendant's case. Mr. Pilato also spoke with Mr. Lott's attorney, David Murante, Esq., prior to deciding whether the [sic] call Mr. Lott as a witness. Mr. Murante informed Mr. Pilato that he was unaware of his client's whereabouts, believing he left town, and that if he were able to locate Mr. Lott, Mr. Murante would advise his client to assert his Fifth Amendment right to remain silent on these issue[s], because of the possibility of federal charges relating to this incident. Mr. Pilato further recalls [the trial court] informing counsel that it would not allow evidence at trial (including testimony) that Mr. Lott was found not guilty of these charges. Mr. Pilato thereafter decided not to call Mr. Lott as a witness.

People's Affirmation at 4-5, Resp't Ex. B at 77. The trial court (Sirkin, J.) denied Ward's C.P.L.

§ 440.10 claim of ineffective assistance of counsel, finding that Ward's papers were deficient

because they lacked an affidavit from his attorney explaining his trial strategy, or an explanation

as to why he was unable to obtain such an affidavit. Order Denying C.P.L. § 440.10 Motion at 2,

Resp't Ex. F at 137. The trial court noted that even if the C.P.L. § 440.10 motion were to be

considered on its merits, "summary denial of the relief requested would be appropriate." *Id.* The

trial court explained,

> Defendant's avowed purpose in calling the co-defendant would have been to have him testify as to his acquittal on the same charges. The Defendant's moving papers include a portion of the trial transcript in which the Court ruled testimony as to the resolution of the co-defendant's charges would be "utterly irrelevant" and therefore prohibited. The Defendant did not challenge this evidentiary ruling on appeal. Under these circumstances, the Defendant has failed to raise any valid argument demonstrating "the absence of strategic or other legitimate explanation" for counsel's decision not to call Mr. Lott as a witness.

Order Denying C.P.L. § 440.10 Motion at 2-3, Resp't Ex. F at 137-38 (quotation omitted).

Ward then moved for reargument of the C.P.L. § 440.10 motion on July 23, 2003, submitting two letters to defense counsel he had written to attorney Pilato dated September 5, 2001, and September 17, 2001, in which he asked, "[C]an you please tell me your reason for not calling D.L. [Lott] at trial as my witness to say that he was acquitted and to say that he and I didn't rob Jipcho [Bordeaux] and that he never possessed a gun or told me to take money and jewelry from Jipcho[?]." Letter from Petitioner to Louis Pilato, Esq., dated September 5, 2001, Resp't Ex. D at 113. In his motion to reargue, Ward asserted that defense counsel "would not respond to any of defendant's correspondence, nor return[ ] telephone calls to his office from defendant's mother[.]" (These letters to defense counsel apparently were sent while Ward was preparing his *pro se* supplemental brief on direct appeal.) The trial court denied the motion to reargue on August 10, 2003, finding that the motion was "not based upon any matters of fact or law overlooked or misapprehended by the court." Order Denying Motion to Reargue, Resp't Ex. E at 115. Leave to appeal to the Appellate Division was denied.

The Sixth Amendment guarantees to a criminal defendant "the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, and that "there is a reasonable probability that, but for counsel's

-21-

unprofessional errors, the result of the proceeding would have been different." *id*. at 694. A

"reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of

the petitioner's trial. *Id.* at 694. Under the *Strickland* test, a court need not address its two prongs

in any particular order since a finding that a defendant or petitioner has failed to satisfy one prong

obviates the need to consider the other prong. *Id.* at 697

The Supreme Court has explained that there is "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; [the petitioner] must

overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Id.* at 689. "The decision whether to call any witnesses on

behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort

engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294,

1321 (2d Cir.), *cert. denied*, 484 U.S. 958 (1987); *accord, e.g.*, *United States v. Smith*, 198 F.3d

377, 386 (2d Cir. 1999); *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) . Given the

inherently tactical nature of the decision not to call a particular witness, the Second Circuit

generally has refrained from disturbing such choices by trial counsel. *See Trapnell v. United*

*States*, 725 F.2d 149, 155 (2d Cir.1983) ("We have repeatedly noted our reluctance to

second-guess matters of trial strategy simply because the chosen strategy was not successful.");

*accord, e.g.*, *Pavel v. Hollins*, 261 F.3d 210, 217 (2d Cir. 2001); *see also United States v.*

*Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) ("[T]he tactical decision of whether to call specific

witnesses-even ones that might offer exculpatory evidence-is ordinarily not viewed as a lapse in

professional representation."); *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A

failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for

ineffective assistance of counsel."), *cert. denied*, 123 S. Ct. 1949 (2003); *Strickland*, 466 U.S. at

690 ("strategic choices made after thorough investigation of law and facts relevant to plausible

options are virtually unchallengeable").

On the facts presented here, the Court cannot find that trial counsel's failure to call Lott to

testify was unreasonable or that Ward's defense was prejudiced by that strategic decision. As the

C.P.L. § 440.10 court pointed out, the trial judge held that evidence as to co-defendant Lott's

acquittal was not relevant and would not be admissible. During jury selection, the prosecutor

made a motion *in limine* noting the fact of Lott's acquittal and requesting that "any reference to

[co-defendant's] trial concerning what the disposition was be prohibited by" defense counsel.

T.19. When asked if he wanted to be heard, defense counsel noted that at Lott's trial, the

prosecution had made references to Ward having an upcoming trial and the jury was given

instructions that it should not consider what was going to be occurring. T.20. In the context of

Ward's trial, defense counsel expressed a concern that he did not "know how the People intend

to proceed in terms of Mr. Lott's situation, how they intend, if at all, to express any case to the

jury as far as the co-defendant is concerned." T.20. The trial judge stated that it was his "position

that the other matter [wa]s completely irrelevant to this matter. So the [co-defendant's] name

must be mentioned during the course of the proceedings, but the resolution of that prior matter is

utterly irrelevant. I will prohibit it." T.20. Defense counsel noted his exception. T.21.

Ward argues that the trial judge's ruling was "not with reference to Lott's potential

'testimony', but to trial counsel's reference to Lott's acquittal to the jury in presentation of

defendant's defense." Resp't Ex. D at 108.  Ward is suggesting that the ruling did not preclude

Lott from providing testimony that he had been acquitted. This argument, however, is mere

"hair-splitting"; the trial court's ruling clearly states that "*the resolution* of that prior matter is

utterly irrelevant." T.20 (emphasis supplied). The Court cannot find that it would be reasonable

to read the trial judge's ruling as drawing a distinction based on the *source* from which the

information about co-defendant Lott's acquittal came, *i.e.*, from Lott himself as opposed to

counsel.  Furthermore, the New York case, *People v. Lawson*, 112 A.D.2d 457, 461 (App. Div.

3d Dept.), *appeal denied*, N.Y.2d 764 (N.Y. 1985), quoted by Ward regarding the admissibility

of the acquittal does not actually support his position. In *Lawson*, the Appellate Division held

that  the trial "properly ruled" that "should [co-defendant] be called by defendant as a witness, he

*could not be* questioned about his acquittal of the instant charge." *Id.* (emphasis supplied). Only

if the prosecutor were to "impermissibly cross-examine [co-defendant] about the acts underlying

the instant crime would his acquittal of the instant charge be relevant." *Id.* Thus, *People v.*

*Lawson* directly contradicts Ward's assertion that Lott would have been permitted to testify on

the defense's direct case about his acquittal. Ward also argues that the prosecution "never

avowed that they would not have opened the door upon cross-examination" to testimony

regarding the acquittal. However, the prosecution had explicitly requested that the jury not hear

any reference to co-defendant Lott's acquittal; having obtained a favorable ruling on that point, it

would not have made sense for it to have risked "opening the door" to that testimony later on.

    That brings the Court to Ward's next argument–that "Lott's testimony was crucial even

absent mention of the actual acquittal," Resp't Ex. D at 109, because Lott "would have testified

to his non-involvement with defendant in the crimes charged, that he did not own nor possessed

[sic] a handgun used to facilitate the crime, or commanded defendant to rob alleged victim

Bordeaux," *id.*  Based on the prosecution's representations regarding its conversations with trial

counsel, the Court is not convinced that Lott would have agreed to testify: The prosecution indicated that Lott's attorney, when Ward's attorney contacted him about having Lott testify, stated that he would his client Lott to exercise his Fifth Amendment privilege against self-incrimination.

Even assuming that Lott would have agreed to testify about the incident involving Bordeaux and would not have invoked his Fifth Amendment right, there is no reasonable probability that his testimony would have altered the outcome of the trial. Ward was convicted only of the fourth count of the indictment, which alleged that he "forcibly stole property" from the victim, and that "in the course of the commission of the crime, he or another participant in the crime was armed with a deadly weapon, to wit, a loaded firearm." T.461-62. Ward contends that Lott "would have testified to his non-involvement with defendant in the crimes charged, that he did not own nor possessed [sic] a handgun used to facilitate the crime, or commanded defendant to rob alleged victim Bordeaux," *id.* However, testimony by co-defendant Lott that he did not tell Ward to take money from the victim and did not have a gun simply would have stood in contradiction to the victim's testimony that Lott did, in fact, so. Without concomitant proof of Lott's acquittal, the force of any purportedly exculpatory testimony from Lott would have been considerably blunted. The Court is not persuaded that testimony from a co-defendant that he and Ward simply "didn't do it", without more, would have resulted in a more favorable outcome. Accordingly, the Court cannot find that Ward was prejudiced by the failure of trial counsel to seek to call co-defendant Lott as a witness.

## V.   Conclusion

For the reasons stated above, Bobby Ward's petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 is denied, and the petition and amended petition are dismissed.  Because

Ward has failed to make a substantial showing of a denial of a constitutional right, I decline to

issue a certificate of appealability. *See* 28 U.S.C. § 2253.

     **IT IS SO ORDERED.**

                                 /s/ *Victor E. Bianchini*

                                        _____

                                           VICTOR E. BIANCHINI
                                    United States Magistrate Judge

DATED:      September 6, 2007
                Buffalo, New York.